1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

SASHA HAWLEY,

                            Plaintiff,

        v.

THE TRAVELERS COMPANIES,
INC., a foreign corporation doing
business in the State of Washington,

                            Defendant.

NO:  2:14-CV-38-RMP

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT AND
GRANTING MOTION TO DISMISS
CERTAIN CLAIMS VOLUNTARILY

13

14

15

16

        Before the Court are Defendant Travelers' Motion for Summary Judgment,

**ECF No. 18**, and the parties' Stipulated Motion to Dismiss Certain Claims

Voluntarily, **ECF No. 23**.  The Court has considered the record and is fully

informed.

17

BACKGROUND

18

19

20

        Plaintiff, Sasha Hawley, worked as an underwriter for Defendant, The

Travelers Companies, Inc., from 2008 to 2013.  ECF No. 25-1 at 1.  Ms. Hawley

contends that she consistently processed work faster than her colleagues and

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO DISMISS CERTAIN CLAIMS VOLUNTARILY ~ 1

1    therefore was given higher daily goals.  ECF No. 25-1 at 2.  Ms. Hawley states that

2    she was expected to complete 40 ARN transactions per work day, while two other

3    coworkers had anticipated productivity levels of 20 or 25 ARNs per day.  ECF No.

4    25-2 at 26.[1]

5        In approximately June or July 2012, however, Ms. Hawley began

6    experiencing aches and cramping in her arms, wrists, and hands.  ECF No. 25-1 at

7    2.  She was diagnosed with carpal tunnel syndrome or severe tendonitis in

8    September 2012.  ECF No. 25-1 at 2.

9        Ms. Hawley's physician placed restrictions on her ability to work.  ECF No.

10   25-1 at 2.  Activity prescription forms dated November and early December release

11   Ms. Hawley for full duty, limited to four hours per day.  ECF No. 21 at 20, 21, 22.

12   Travelers accommodated this restriction and reduced her daily goal by half, to 20

13   ARNs per day.  ECF No. 21 at 2-3; *see also* ECF No. 20 at 3.

14       Later in December 2012, however, Ms. Hawley's physician further restricted

15   her to completing ten items in a four-hour work period with a ten-minute break

16   every hour to perform hand exercises and relax her hands.  ECF Nos. 21 at 24; 25-

17   1 at 4.  Travelers refused to accommodate the new restriction.  ECF Nos. 21 at 2;

18   22-13 at 175.  Instead, on December 31, 2012, Ms. Hawley was placed on leave of

19

20

---

[1] The record does not reveal what the acronym "ARN" means, although Ms. Hawley explained during her deposition that it is a relatively difficult insurance transaction in which an underwriter decides whether an insurance policy should be continued.  *See* ECF No. 22-1 at 14-15.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO DISMISS CERTAIN CLAIMS VOLUNTARILY ~ 2

absence through January 9, 2013, the end date of the restriction.  ECF No. 22-13 at 175.  Travelers continued Ms. Hawley's leave of absence until January 15 after Ms. Hawley's physician extended her work restrictions through that date.  ECF No. 22-14.  However, Travelers informed Ms. Hawley that it was "not obligated under state or federal law, to modify and reduce its productivity standards . . . regardless of the particulars of [her] or any other employee's medical circumstances."  ECF No. 22-14.  Travelers offered to explore reasonable accommodations with Ms. Hawley.  ECF No. 22-14.

In February 2013, Travelers arranged for ARN transactions to be processed at another office and established uniform productivity expectations for all employees in Ms. Hawley's department, who instead would process "journal" transactions.  ECF Nos. 22-1 at 58; 22-12.  Because journal transactions purportedly were simpler than ARN transactions, Travelers set a higher daily production goal.  ECF No. 22-12.  Ms. Hawley and her peers would be expected to complete 45 journals per day.  ECF No. 20 at 3.

Travelers provided accommodations for Ms. Hawley, including a new chair and an ergonomic keyboard, mouse, and wrist pad.  ECF Nos. 21 at 2, Ex. 2 at 1; 22-1 at 54.  Travelers also purchased an adjustable desk and installed voice recognition software for Ms. Hawley.  *See* ECF Nos. 21 at 4, 33; 22-1 at 39.

The voice recognition software and adjustable desk were available for Ms. Hawley's use by March 13, 2013.  ECF No. 21 at 4, 34.[2]  Ms. Hawley arrived at the Travelers office on that date and gave Travelers an updated form from her physician, who released her to work eight-hour shifts with the ergonomic work station but limited her to processing no more than 30 items per day, to be increased by five items every two weeks.  ECF Nos. 21 at 28; 22-6 at 147.

Ms. Hawley indicated that she was released to work as long as Travelers provided all of the accommodations that her physician had imposed, including the reduced daily goal.  *See* ECF No. 22-6 at 147-48.  Travelers again refused to accommodate Ms. Hawley's reduced productivity restriction and asked her to refrain from coming into work until she had an approved release.  ECF No. 22-6 at 148.  Travelers also deactivated Ms. Hawley's access badge.  ECF No. 22-6 at 147.

Ms. Hawley and Travelers stayed in contact, but Ms. Hawley never returned to work.  In April or May 2013, Travelers offered to grant Ms. Hawley the same 90-day "burn-in" period that her coworkers had been given to adjust to the employer's new quality and productivity requirements.  *See* ECF No. 22-4 at 137.  During the "burn-in" period, Ms. Hawley would not be required to meet the

---

[2] Ms. Hawley asserts, however, that when she went into the office on March 13, 2013, she was told that the ergonomic work station was not ready.  ECF No. 25-1 at 8.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION TO DISMISS CERTAIN CLAIMS VOLUNTARILY ~ 4

employer's minimum standards of productivity.  ECF Nos. 21 at 5; 22-4 at 137.[3]

Travelers asserted its belief that the "burn-in" period would be a sufficient length

of time for Ms. Hawley to re-adjust to the job.  ECF No. 22-4 at 137.

In May 2013, Ms. Hawley accepted a position at a different insurance

company.  ECF No. 22-1 at 38.  After learning that Ms. Hawley had accepted

another job, Travelers sent Ms. Hawley a letter terminating her employment.  ECF

No. 22-8.

Ms. Hawley filed suit in Spokane County Superior Court on January 2,

2014, alleging ten causes of action.  ECF No. 1 at 2, Ex. 1 at 8-14.[4]  The parties

stipulate to the dismissal with prejudice of Ms. Hawley's first, second, fourth, fifth,

sixth, and seventh claims.  ECF No. 23.  Ms. Hawley also voluntarily dismissed

her tenth cause of action.  ECF No. 25 at 1.  Accordingly, the Court will not

consider Travelers' arguments regarding those claims.

---

[3] Ms. Hawley asserts in her response brief that Travelers ultimately stated that it would not
provide her with the "burn-in" period that had been offered to other employees.  ECF No. 25 at 7
(citing "See, Decl. E. Rosentrater, Exh. A at pp. 139").  However, the Court's review of the
exhibit attached to Ms. Rosenstrater's declaration did not reveal support for this assertion.
Confusion may have arisen because Travelers first offered Ms. Hawley only a 4-6 week "ramp
up" period, which Travelers explained was available for employees who returned to work after
being on leave for several months.  *See* ECF No. 21 at 51.  However, Travelers later clarified that
Ms. Hawley would be granted the longer 90-day "burn-in" period that her coworkers had been
given.  *See* ECF No. 21 at 50.

[4] The Complaint purportedly includes eleven causes of action but it skips number three.  *See*
ECF No. 22-2 at 80-81.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO DISMISS CERTAIN CLAIMS VOLUNTARILY ~ 5

In her remaining causes of action, Ms. Hawley alleges that Travelers failed to accommodate her disability, that Travelers discriminated against her based on her disability, and that she was terminated in retaliation for filing claims with government agencies.

ANALYSIS

Travelers moves for summary judgment, contending that it provided reasonable accommodations for Ms. Hawley's disability, that Ms. Hawley cannot establish a prima facie case of disability discrimination, and that Ms. Hawley's retaliation claim fails because she voluntarily quit her job to work for another employer.

*Summary Judgment Standard*

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The party asserting the existence of an issue of material fact must show "'sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting

1  *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).    The

2  nonmoving party "may not rely on denials in the pleadings but must produce

3  specific evidence, through affidavits or admissible discovery material, to show that

4  the dispute exists."  *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir.

5  1991).    In deciding a motion for summary judgment, a court must construe the

6  evidence and draw all reasonable inferences in the light most favorable to the

7  nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 630-31.

8          *1. Failure to Accommodate*

9          Ms. Hawley alleges that Travelers violated state law by failing to provide

10  reasonable accommodations for her disability.  *See* ECF No. 25 at 15-18.  To

11  establish a prima facie claim of failure to reasonably accommodate under the

12  Washington Law Against Discrimination ("WLAD"), a plaintiff must show that:

13  (1) she had a disability; (2) she was qualified to perform the essential functions of

14  the position; (3) she gave the employer notice of the disability; and (4) upon

15  receiving notice, the employer failed affirmatively to adopt measures that were

16  both available to the employer and medically necessary to accommodate the

17  disability.  *See Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 145 (2004) (listing

18  similar elements but including a definition of "disability" that later was overruled);

19  *see also Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 500-03 (2009)

20  (explaining the development of the term "disability").  The WLAD "requires

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO DISMISS CERTAIN CLAIMS VOLUNTARILY ~ 7

1    employers to reasonably accommodate a disabled employee unless the

2    accommodation would be an undue hardship on the employer." *See Riehl*, 152

3    Wn.2d at 145.

4          The parties disagree primarily about whether Travelers failed to adopt

5    reasonable accommodations.  Ms. Hawley claims that by refusing to comply with

6    her physician's restriction on how many items she could complete in a day,

7    Travelers failed to accommodate her disability.  Travelers argues that reducing Ms.

8    Hawley's productivity goal was not a reasonable accommodation.

9          After receiving notice of an employee's disability, an employer bears the

10   burden of taking "'positive steps' to accommodate the employee's limitations."

11   *Goodman v. Boeing Co.*, 127 Wn. 2d 401, 408 (1995), *amended* (Sept. 26, 1995)

12   (quoting *Holland v. Boeing Co.*, 90 Wn.2d 384, 388-89 (1978)).  Reasonable

13   accommodation involves an exchange of information between an employee and

14   employer.  *Id.* at 408-09.  "An employer need not necessarily grant an employee's

15   specific request for accommodation."  *Pulcino v. Fed. Express Corp.*, 141 Wn.2d

16   629, 643 (2000), *overruled on other grounds by McClarty v. Totem Elec.*, 157

17   Wn.2d 214 (2006).

18         Here, it is uncontested that in response to the activity prescription forms

19   written by Ms. Hawley's physician, Travelers provided some accommodations.

20   Travelers allowed Ms. Hawley to work four hours per day with a proportionally

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO DISMISS CERTAIN CLAIMS VOLUNTARILY ~ 8

1    reduced productivity goal.  *See* ECF No. 21 at 2-3.  Travelers also placed Ms.

2    Hawley on leave when it appeared that the parties were unable to agree on other

3    accommodations.  *See* ECF No. 22-13 at 175.  The evidence also supports

4    Travelers' contention that it installed voice recognition software and an adjustable

5    desk to accommodate Ms. Hawley's disability.[5]

6            Travelers declined to reduce Ms. Hawley's average productivity goal, but

7    the employer was not obliged to provide the accommodation that Ms. Hawley's

8    physician noted.  Ms. Hawley's insistence that Travelers comply with the precise

9    accommodation recommended by her physician went beyond the exchange of

10   alternatives contemplated within the reasonable accommodation of a disability and

11   instead mandated a specific result.  As stated above, employers are not required to

12   provide a specific accommodation that an employee suggests.  *See Pulcino*, 141

13   Wn.2d at 643.

14   _____

15   [5] In response to the Motion for Summary Judgment, Ms. Hawley states that when she went into
     work on March 13, 2013, she "was informed that the ergonomic work station was not ready."

16   ECF No. 25-1 at 8.  During her deposition, however, Ms. Hawley explained that she is unaware
     of whether the adjustable desk ever had been installed and that she had never seen it because her

17   badge to enter the office had been deactivated before she could use the desk.  ECF No. 22-1 at
     39.  Moreover, an email from Travelers dated March 11, 2013, indicates that the desk had been

18   installed.  ECF No. 22-6 at 149.  To the extent that Ms. Hawley's current contention that she was
     told that the work station was not ready on March 13 conflicts with her earlier deposition

19   testimony that she was unaware of whether the desk ever had been installed, it is not well taken.
     *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (party generally may not

20   create issue of fact by contradicting prior testimony).  The only evidence properly before the
     Court indicates that Travelers purchased and installed the adjustable desk.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO DISMISS CERTAIN CLAIMS VOLUNTARILY ~ 9

1    Furthermore, Ms. Hawley's request to reduce her productivity goal was not

2    reasonable.  An employer need not eliminate or reassign essential job functions to

3    accommodate an employee's disability.  *Id.* at 644.  Ms. Hawley requested

4    Travelers to reduce her daily productivity goal to one-quarter of her pre-disability

5    goal, or one-half of her goal while working on a reduced schedule.  *See* ECF Nos.

6    21 at 24; 25-1 at 3.  Based on the record, it is apparent that processing transactions

7    was an essential, if not the primary, function of Ms. Hawley's position.  To

8    maintain the office's productivity, Travelers would have needed to reassign Ms.

9    Hawley's workload to other employees, which the WLAD does not require.

10    Ms. Hawley contends that even if an employer is not required to reduce

11    *uniform* productivity standards as a reasonable accommodation, Travelers'

12    productivity goals for her group were not uniform at the time when she went on

13    unpaid leave.  ECF No. 25 at 13-14; *see also* Enforcement Guidance: Reasonable

14    Accommodation and Undue Hardship Under the Americans with Disabilities Act,

15    EEOC Notice No. 915.002, October 17, 2002, available at

16    http://www.eeoc.gov/policy/docs/accommodation.html (an employer is not

17    "required to lower production standards—whether qualitative or quantitative—that

18    are applied uniformly to employees with and without disabilities") (footnote

19    omitted).  Ms. Hawley calculates that because her peers were expected to produce

20    as few as 20 items in an eight-hour workday, her restriction to 10 items in a four-

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO DISMISS CERTAIN CLAIMS VOLUNTARILY ~ 10

1    hour workday merely would have placed her at the same level of average

2    productivity as at least one of her coworkers.[6]

3         However, Ms. Hawley improperly assumes that her coworkers also would

4    have been allowed to work four-hour shifts. As conditions existed at the time

5    when Ms. Hawley was placed on unpaid leave, her daily productivity level would

6    have been *half* that of her coworker with the lowest goal if Travelers had complied

7    with her doctor's restrictions. That was not a reasonable accommodation to

8    demand from Travelers.[7]

9         Finally, Travelers repeatedly indicated that it was willing to consider other

10   accommodations, which Ms. Hawley did not pursue. For example, in April or May

11   2013, Travelers offered Ms. Hawley the same 90-day "burn-in" period that her

12   coworkers had been granted to adjust to new productivity and quality

---

13   [6] The Court notes that Ms. Hawley has not offered proper evidence to support her contention that her coworkers were expected to process fewer transactions per day than she was required to

14   produce. Ms. Hawley's knowledge of her coworkers' productivity requirements is based on statements that those coworkers made. *See* ECF No. 25-2 at 26. Ms. Hawley recounted those

15   statements during her deposition, excerpts from which were submitted in opposition to the Motion for Summary Judgment. ECF No. 25-2. "An affidavit or declaration used to support or

16   oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

17   Fed. R. Civ. P. 56(c)(4). Although Ms. Hawley's deposition properly was attached to a declaration filed by her attorney, Ms. Hawley's account of her coworkers' statements would not

18   be admissible at trial to prove the truth of those statements. *See* Fed. R. Evid. 801, 802. However, even assuming the truth of the improper hearsay statements, Ms. Hawley's claim

19   would not succeed for the reasons discussed in the body of this Order.

20   [7] Moreover, by February 2013, Travelers had imposed the uniform goal of 45 items per day, with an apparently less demanding type of report. *See* ECF No. 22-12.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO DISMISS CERTAIN CLAIMS VOLUNTARILY ~ 11

1    measurements, but Ms. Hawley responded that only an open-ended modification to

2    her productivity goal would be sufficient.  *See* ECF Nos. 22-4 at 137 (email from

3    Ms. Hawley stating that the productivity limitations were "light duty restrictions

4    for [her] doctor to re-evaluate how [her] progress is doing with [her] hands"); 22-4

5    at 142 ("Please confirm for me that Travelers will accomodate [sic] my light duty

6    restrictions set forth by my doctor and any further light duty restrictions set forth

7    by my doctor beyond that point?").  Travelers' attempts to arrange reasonable

8    accommodations apparently ended when the employer terminated Ms. Hawley

9    effective June 3, 2013, because she had accepted other employment.  ECF No. 21

10   at 54.

11          Ms. Hawley has not raised a genuine issue of material fact regarding

12   whether Travelers failed to reasonably accommodate her disability.  Travelers is

13   entitled to summary judgment on this claim.[8]

---

[8] This issue also implicates whether meeting the productivity goal was an essential function of
Ms. Hawley's job that she was unable to perform, such that she would not have been qualified
for her position.  If so, state law would not have required Travelers to attempt to accommodate
her disability.  *See Clarke v. Shoreline Sch. Dist. No. 412, King Cnty.*, 106 Wn.2d 102, 119
(1986) ("[A]n employer may discharge a handicapped employee who is unable to perform an
essential function of the job, without attempting to accommodate that deficiency.").  However,
because the parties do not discuss the issue, the Court bases its analysis on reasonable
accommodation.

*2. Disability Discrimination*

Ms. Hawley also alleges that Travelers discriminated against her because of her disability.  The WLAD prohibits an employer from discriminating against someone on the basis of disability if the person is qualified to perform the job. RCW 49.60.180.  In the absence of direct evidence of discriminatory animus, an employee may avoid summary judgment if she establishes a presumption of discrimination by making a prima facie case.  *Riehl*, 152 Wn.2d at 149-50.  To raise a prima facie case of disability discrimination under the WLAD, a plaintiff must show that:  (1) she was disabled, (2) she was subject to an adverse employment action, (3) she was doing satisfactory work, and (4) the adverse employment action occurred under circumstances that raise a reasonable inference of unlawful discrimination.  *See Anica v. Wal–Mart Stores, Inc.*, 120 Wn. App. 481, 488 (2004); *see also Riehl*, 152 Wn.2d at 150 (considering, under fourth prong, whether employee was treated differently from a nondisabled person).[9]

If a plaintiff establishes a prima facie case of discrimination, the burden then shifts to the employer to articulate a non-discriminatory explanation for the adverse

---

[9] Because the facts of discrimination claims vary broadly, the same elements of a prima facie case are not necessarily applicable to every circumstance.  *See Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 181 n.2 (2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n.13 (1973)), *as amended on denial of reconsideration* (July 17, 2001), *overruled on other grounds by McClarty*, 157 Wn.2d 214.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION TO DISMISS CERTAIN CLAIMS VOLUNTARILY ~ 13

1   action.  *Riehl*, 152 Wn.2d at 150.  If this burden is met, the plaintiff then must

2   show that the proffered explanation is a pretext for discriminatory intent.  *Id.*

3         Here, the parties dispute whether Ms. Hawley suffered an adverse

4   employment action and whether she was treated differently from non-disabled

5   coworkers.  Ms. Hawley claims that she suffered adverse employment action by

6   being placed on unpaid leave and constructively terminated on March 13, 2013,

7   when she was asked to leave the workplace until her work release allowed her to

8   conform to Travelers' expectations.  Also, Ms. Hawley claims that she was treated

9   differently from her nondisabled coworkers, who were allowed to process fewer

10  items per day than Ms. Hawley and who were granted a 90-day "burn-in" period

11  when Travelers changed the quantity and type of items that her group would

12  process.

13        Viewing the evidence in the light most favorable to Ms. Hawley, the Court

14  finds that she has failed to raise a genuine issue of material fact regarding whether

15  she was subjected to adverse employment action.  Unpaid leave, although

16  understandably difficult for an injured or disabled employee, is a recognized form

17  of reasonable accommodation.  *See* Enforcement Guidance: Reasonable

18  Accommodation and Undue Hardship Under the Americans with Disabilities Act,

19  EEOC Notice No. 915.002, October 17, 2002, available at

20  http://www.eeoc.gov/policy/docs/accommodation.html ("Permitting the use of

1  accrued paid leave, or unpaid leave, is a form of reasonable accommodation when

2  necessitated by an employee's disability.").[10]  Under these circumstances, the

3  Court finds that Travelers' decision to place Ms. Hawley on unpaid leave rather

4  than consent to her doctor's prescription of reduced productivity was a reasonable

5  accommodation rather than an adverse employment action.

6      Moreover, the Court disagrees with Ms. Hawley that she effectively was

7  terminated as of March 13, 2013, when Travelers deactivated her work badge and

8  asked her to leave the workplace.  *See* ECF No. 25 at 10-11.[11]  Emails that

9  Travelers sent to Ms. Hawley on March 13 reflect that the company was not

10  terminating her but that the employer instead refused to provide the specific

11  accommodation that she requested and asked her not to return to work until

12  mutually agreeable conditions had been set.  *See* ECF No. 21 at 35 ("*Until you*

13  *have an approved release to return to work*, we would ask that you please refrain

14  *from coming to work*."), 34 ("*If you intend to return with an updated release*

15  [10] Although this publication concerns the federal Americans with Disabilities Act, Washington
state courts look to federal discrimination law for guidance when interpreting the WLAD.
16  *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 491 (2014).

17  [11] Ms. Hawley uses the term "constructive discharge," but it does not appear that she relies on
that legal theory.  Constructive discharge requires a person who quit her job to "show that an
18  employer engaged in a deliberate act, or a pattern of conduct, that made working conditions so
intolerable that a reasonable person would have felt compelled to resign."  *Barnett v. Sequim*
19  *Valley Ranch*, LLC, 174 Wn. App. 475, 485, *review denied*, 178 Wn.2d 1014 (2013).  The facts
of this case and Ms. Hawley's arguments indicate that she believes that Travelers actually
20  terminated her employment as of March 13, 2013, by disabling her access badge and not that she
resigned under circumstances that would have induced a reasonable person to leave employment.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO DISMISS CERTAIN CLAIMS VOLUNTARILY ~ 15

1  please notify me and I will re-activate your badge access.") (emphasis added).

2  Additionally, in the following weeks, Travelers emailed Ms. Hawley to offer her a

3  similar period of adjustment that her peers might receive, during which time she

4  would not be penalized for failing to meet productivity or quality standards.  ECF

5  No. 22-4 at 141, 142.  Ms. Hawley has failed to raise a genuine issue of material

6  fact regarding whether she was terminated on March 13, 2013, such that Travelers'

7  actions on that date do not constitute adverse employment action.

8          Also, the evidence before the Court does not establish a genuine dispute

9  about whether Ms. Hawley was treated differently from her nondisabled

10  coworkers.  As discussed above regarding Travelers' reasonable accommodations,

11  at the time when Ms. Hawley was placed on unpaid leave, her requested work

12  restriction would have limited her daily processing goal to half of the number of

13  items that she contends that her peer with the lowest daily goal was expected to

14  produce.  Moreover, when Travelers imposed a uniform productivity goal and

15  offered Ms. Hawley the same 90-day "burn-in" period that her coworkers had been

16  given, Ms. Hawley explained that she instead wanted an exemption from

17  productivity levels until her condition had improved.  *See* ECF No. 22-4 at 139

18  ("I'm not guaranteed to be 100% after the 90 days and this is why my doctor has

19  me on light duty restrictions to check my progress and how my arms/hands are

20  doing.").  Thus, Ms. Hawley was not treated differently from her coworkers in

regard to the "burn-in" period; instead, she sought an open-ended exemption from her productivity goals, which her peers did not receive and Travelers was not obligated to provide.

Accordingly, Ms. Hawley has failed to support a prima facie case of disability discrimination.  Travelers merits summary judgment in its favor on this claim.

*3. Retaliation*

Ms. Hawley also claims that Travelers terminated her on March 13, 2013, in retaliation for her efforts to seek disability accommodations.  Retaliation claims are subject to the same burden shifting scheme as discrimination claims under the WLAD.  *Milligan v. Thompson*, 110 Wn. App. 628, 638 (2002).  To establish a prima facie case of retaliation, a plaintiff "must show that (1) she engaged in statutorily protected activity, (2) [the employer] took some adverse employment action against her, and (3) retaliation was a substantial factor behind the adverse employment action."  *Washington v. Boeing Co.*, 105 Wn. App. 1, 14 (2000).  The third element may be shown "by establishing that the employee participated in an opposition activity, the employer knew of the opposition activity, and the employee was discharged."  *Graves v. Dep't of Game*, 76 Wn. App. 705, 712 (1994) (citing *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 69 (1991)).

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO DISMISS CERTAIN CLAIMS VOLUNTARILY ~ 17

1    The parties do not appear to dispute, and the Court agrees, that Ms. Hawley

2    engaged in statutorily protected activity by pursuing reasonable accommodation

3    for her disability and that Travelers took adverse action against Ms. Hawley by

4    firing her.  However, as discussed above in regard to Ms. Hawley's general claim

5    of disability discrimination, the Court finds that Ms. Hawley was not terminated on

6    March 13, 2013, when Travelers asked her not to return to work until alternative

7    work restrictions had been approved.  Rather, Ms. Hawley was terminated

8    effective June 3, 2013, as explained in the letter that Travelers sent to Ms. Hawley.

9    *See* ECF No. 21 at 54.  Although the Court disagrees with Ms. Hawley about the

10   date on which she was terminated, the Court finds that she established a prima

11   facie case of retaliation because Travelers discharged her after learning that she

12   had engaged in protected activity.

13        Travelers, however, satisfies its burden of providing a legitimate,

14   nondiscriminatory reason for its decision to terminate Ms. Hawley, who had

15   accepted a full-time position with another employer.  *See* ECF No. 21 at 5.  The

16   Court finds no evidence in the record to indicate that this reason is merely a pretext

17   for retaliation.  Thus, summary judgment in Travelers' favor is appropriate on Ms.

18   Hawley's retaliation claim as well.

19   / / /

20   / / /

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO DISMISS CERTAIN CLAIMS VOLUNTARILY ~ 18

Accordingly, **IT IS HEREBY ORDERED**:

1. The Stipulated Motion to Dismiss Certain Claims Voluntarily, **ECF No. 23**, is **GRANTED**.

2. Ms. Hawley's **first, second, fourth, fifth, sixth, seventh, and tenth claims** are dismissed with prejudice and without awarding costs or attorney fees to either party.

3. Travelers' Motion for Summary Judgment, **ECF No. 18**, is **GRANTED** as to Ms. Hawley's remaining claims.

The District Court Clerk is directed to enter this Order, enter judgment accordingly, provide copies to counsel, and **close** this case.

**DATED** this 24th day of April 2015.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO DISMISS CERTAIN CLAIMS VOLUNTARILY ~ 19